UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00015-GNS

JENNITH COONTZ                                                                                      PLAINTIFF

v.

METROPOLITAN LIFE INSURANCE
COMPANY                                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss, or in the alternative, Motion to Remand (DN 7), Defendant's Motion for Extension of Time to File Reply (DN 11), and Plaintiff's Motion to Strike Reply as Untimely Filed (DN 14). For the following reasons, Defendant's Motion to Dismiss is **DENIED**, Defendant's Motion for Extension of Time to File Reply is **GRANTED**, and Plaintiff's Motion to Strike Reply as Untimely Filed is **DENIED**.

## I.  BACKGROUND

Plaintiff Jennith Coontz ("Coontz") was employed at American Greetings Corporation. (Notice Removal Ex. A, at 2, DN 1-2 [hereinafter Compl.]). As part of her employment, Coontz had accidental death and dismemberment ("AD&D") benefits through two plans: the American Greetings Corporation Personal Accidental Death and Dismemberment Plan and the American Greetings Corporation Voluntary Accidental Death and Dismemberment Plan (collectively the "Plan"), which were both issued by Defendant Metropolitan Life Insurance Company ("MetLife"). (Def.'s Mot. Dismiss Ex. 1, DN 7-1).

On May 4, 2016, Coontz submitted to MetLife a claim for AD&D benefits based on the loss of sight in her right eye. (Compl. ¶ 12). On July 7, 2016, MetLife issued an initial denial of

1

Coontz's claim for benefits on the basis that the "loss of sight was contributed to by the complications arising from the treatment of the lung surgery, therefore, under the terms of the Plan the loss was not the direct result of an accidental injury." (Compl. ¶ 14; Def.'s Mot. Dismiss Ex. 2, DN 7-3). Further, MetLife determined that even if the loss of sight had been the result of an accident, a Plan exclusion precluded payment "for any loss caused or contributed to by . . . physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity." (Def.'s Mot. Dismiss Ex. 2).

With regard to the "Notice of Benefit Determination on Appeal," the Plan provides that an appeal decision must be rendered within 60 days of receipt of the appeal. (Def.'s Mot. Dismiss Ex. 1, at 49-50, DN 7-1). This 60-day period can be extended for an additional 60 days "if the claims administrator both determines that special circumstances require an extension of time for processing the claim, and notifies the covered person (or authorized representative), before the initial sixty (60) day period expires, of the special circumstances requiring the extension of time and the date by which the claims administrator expects to render a determination." (Def.'s Mot. Dismiss Ex. 1, at 49-50). Further, the Plan requires not only a first appeal, but a "second-level appeal" before suit can be initiated. (Def.'s Mot. Dismiss Ex. 1, at 50). In particular, the Plan provides:

> If the covered person is not satisfied with the outcome of the appeals procedure, the covered person has the right to bring a civil action under section 502 (a) of the Employee Retirement Income Security Act of 1974. The covered person may not initiate a legal action against the plan until the covered person has completed the [sic] both the initial and second level appeal process.

(Def.'s Mot. Dismiss Ex. 1 at 50).

By letter dated July 15, 2016, Coontz appealed MetLife's decision. (Compl. ¶ 17). On August 16, 2016, she supplemented her appeal with additional information. (Compl. ¶ 19).

MetLife advised Plaintiff by letter dated August 25, 2016, (the "Extension Letter") that it was "continuing to review [her] appeal dated August 16, 2016." (Compl. ¶ 20; Def.'s Mot. Dismiss Ex. 3, at 1, DN 7-4). MetLife further advised that "[i]t will be necessary for us [MetLife] to obtain additional information; therefore, completion of your [Coontz's] appeal will be delayed for a short period of time." (Compl. ¶ 20; Def.'s Mot. Dismiss Ex. 3). Finally, the Extension Letter advised Coontz that "[w]e will notify you of our findings for ERISA use: within sixty (60) days of receiving the necessary information." (Compl. ¶ 20; Def.'s Mot. Dismiss Ex. 3, at 1).

Although MetLife had not ruled on Coontz's initial appeal, she filed this action in Casey Circuit Court on December 13, 2016. (Compl. ¶ 22). MetLife subsequently removed the case to this Court. (Notice Removal, DN 1). MetLife has now moved to dismiss the case arguing that Coontz failed to exhaust her administrative remedies before filing suit. (Def.'s Mot. Dismiss, DN 7). This matter is ripe for adjudication.

## II. JURISDICTION

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## III. DISCUSSION

### A. MetLife's Motion to Dismiss

MetLife has moved to dismiss the Complaint on the basis that Coontz failed to exhaust her administrative remedies and alternatively requests remand of this matter to MetLife for completion of the administration record.[1] (Def.'s Mot. Dismiss 6-10). A complaint is subject to

---

[1] The parties do not dispute (for purposes of the present motion) that the Plan is subject to ERISA's requirements, that Coontz was obligated to exhaust administrative remedies under the Plan before filing suit in this Court, and that Coontz initiated a first-level administrative appeal

3

dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accepting "as true all factual allegations and permissible inferences therein." *See Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). The nonmoving party, however, must plead more than bare legal conclusions. *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). In order to survive a 12(b)(6) motion, "[the] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While the pleadings do not need to contain detailed factual allegations, the nonmoving party must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Where documents attached to a motion to dismiss are vital to an analysis of the plaintiff's claims, the Court may consider them even though they are outside the pleadings. *See Fisk v. Cigna Grp. Ins.*, No. 10-273-DLB-CJS, 2011 WL 4625491, at *2 (E.D. Ky. Oct. 3, 2011) (explaining that documents attached to a motion to dismiss are considered part of the pleadings if referred to in the complaint and are central to the allegations therein). Where a plaintiff fails to introduce a pertinent document as part of her pleading, a defendant may introduce the exhibit as part of a motion to dismiss attacking the pleading. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). *See also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)

---

after MetLife initially denied her claim for benefits. What is in dispute, however, is the time period for which the first-level appeal was pending before Coontz filed this lawsuit.

(considering a benefit plan and summary plan description submitted with the defendants' motion to dismiss). Indeed, documents integral to or relied upon in a complaint may be considered on a motion to dismiss even if they are not literally attached.[2] *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

1. *Request for Dismissal*

    a. **Exhaustion of Administrative Remedies**

Federal law permits a participant in a plan to which ERISA applies to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Although not formally codified in the statute, the Sixth Circuit has long held that an ERISA plaintiff must exhaust administrative remedies prior to commencing a civil action. *See Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005) ("[I]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim." (citation omitted)); *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) ("[T]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." (internal quotation marks omitted) (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991))). In this case, MetLife asserts that Coontz failed to exhaust her administrative remedies. (Def.'s Mot. Dismiss 6-8). To determine whether Plaintiff satisfied this prerequisite,

---

[2] MetLife has submitted three pertinent exhibits in connection with its Rule 12(b)(6) motion: (i) a copy of the Plan (DN 7-1 to 7-2); a letter dated July 7, 2016, from MetLife to Coontz (DN 7-3) explaining that her initial claim had been denied; and the Extension Letter (DN 7-4) informing her that the appeal decision would be delayed because MetLife needed to obtain additional information. These exhibits are integral to the Complaint as it specifically references the two letters. Furthermore, the Plan permeates the Complaint. Coontz also submitted documents apparently from MetLife's file (DN 8-1 to 8-8). These documents will be considered in connection with MetLife's dispositive motion.

the Court must consider MetLife's review of Coontz's appeal in conjunction with the date this lawsuit was filed.

While an employee must generally exhaust his or her administrative remedies, that requirement is waived when the participant appeals from the denial of benefits but the plan provider fails to make a timely decision on the appeal. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985). If the provider fails to decide the appeal timely, the plan participant's administrative remedies are presumed exhausted and she may file suit. *Russell*, 473 U.S. at 144. *See also* 29 C.F.R. § 2560.503-1(1) ("In the case of the failure of a plan to . . . follow claims procedures consistent with the [timeliness] requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act . . . .").

### i. Time for Appeal Decision

In general, the parties are bound by the appeal process set forth in the Plan. *See Heimeshoff*, 134 S. Ct. at 612 (recognizing "the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims." (citation omitted)). With respect to the time allotted for decision on an appeal, the Plan provides:

> The claims administrator or their designee shall provide the covered person (or authorized representative) with a written notice of the appeal decision within sixty (60) calendar days of receipt of a written request for the appeal. However, this decision-making period may be extended for an additional sixty (60) days, if the claims administrator both determines that special circumstances require an extension of time for processing the claim, and notifies the covered person (or authorized representative), before the initial sixty (60) day period expires, of the special circumstances requiring the extension of time and the date by which the claims administrator expects to render a determination.

(Def.'s Mot. Dismiss Ex. 1, at 49).[3] The regulations provide that the 60-day time period begins when "an appeal is filed in accordance with the reasonable procedures of a plan." 29 C.F.R. § 2560.503-1(i)(4).

As alleged in the Complaint, Coontz wrote a letter to MetLife dated July 15, 2016, (apparently received by MetLife on July 18, 2016) in which she stated that she was appealing MetLife's denial of her claim and listed her reasons for doing so. (Compl. ¶ 17; Pl.'s Resp. Def.'s Mot. Dismiss Exs. 2-3, DN 8-2 to DN 8-3). She further supplemented that appeal on August 16, 2016. (Compl. ¶ 19). This complies with the Plan's reasonable procedures, which state:

> A covered person, or the covered person's authorized representative, may request a review of a denied claim by making written request to the named fiduciary within sixty (60) calendar days from receipt of notification of the denial and stating the reasons the covered person feels the claim should not have been denied.

(Def.'s Mot. Dismiss Ex. 1, at 49). Accordingly, the 60-day time period began running on July 18, 2016. Further, MetLife notified Coontz in the Extension Letter that it needed additional time

---

[3] Coontz contends that her AD&D claim is akin to a disability claim and, per ERISA regulations, a disability claim must be made within 45 days of the submission of the appeal rather than 60 days as prescribed by the Plan, subject to a 45-day extension under "special circumstances." (Pl.'s Resp. Def.'s Mot. Dismiss 4, DN 8 (quoting 29 C.F.R. § 2560.503-1(i)(1) and (i)(3))). Thus, according to Coontz, MetLife had at most 90 days to decide her appeal, not 120 days. Coontz provides no authority for the proposition that an AD&D claim is akin to a disability claim for purposes of ERISA and this Court has found none. Further, Coontz's claim did not require a determination that she is disabled, as it is appears to be undisputed that she has lost sight in her right eye only. (Def.'s Mot. Dismiss Ex. 2). Rather, MetLife had to determine whether her loss of sight was accidental. (Def.'s Mot. Dismiss Ex. 2). *See* Benefit Claims Procedure Regulation FAQs, United States Department of Labor, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation (last visited Aug. 9, 2017) ("[P]lans, including pension plans, *that provide benefits conditioned upon a determination of disability* must maintain procedures for claims involving such benefits that comply with the requirements of the regulation applicable to disability claims . . . ."). Therefore, the regulations for disability claims do not apply to Coontz's claim.

to decide her appeal, which extended its decision period to 120 days. *See* 29 C.F.R. § 2560.503-1(i).

Applying the applicable regulations and the provisions of the Plan to the facts of this case, the 120-day period began running when the notice of the appeal was received by MetLife on July 18, 2016, and ran for 3 days until Coontz requested a pause in the review on July 21, 2016.[4] (Pl.'s Resp. Def.'s Mot. Dismiss Ex. 2, at 1-5, DN 8-2; Pl.'s Resp. Def.'s Mot. Dismiss Ex. 4, at 1, DN 8-4). On August 16, 2016, Coontz's attorney requested by letter that the appeal resume. (Pl.'s Resp. Def.'s Mot. Dismiss Ex. 6, at 3, DN 8-6). After an additional 119 days had passed, Coontz filed her lawsuit in Casey Circuit Court. Thus, adding the time that passed before the appeal was paused and after the appeal resumed through the date suit was filed totals 122 days, two more days than required. Unless the time for MetLife's decision on Coontz's appeal was tolled, as discussed below, Coontz will be deemed to have exhausted her administrative remedies.

### ii.     Effect of MetLife's August 25, 2016, Letter

In addressing whether Coontz exhausted her administrative remedies, the Court must determine whether the 120-day period was tolled by the Extension Letter. (Def.'s Mot. Dismiss 7). The Plan and 29 C.F.R. § 2560.503-1(i)(4) explain how tolling of a plan provider's benefit determination on review is to be effected. In particular, the ERISA claim procedures regulations state:

---

[4] MetLife argues that the time period for it to decide the appeal did not begin running until August 16, 2017, when Coontz perfected her appeal. This would make Coontz's filing of the suit in this Court premature as it would have been filed on the 119th day of the 120-day time limit. However, the regulations plainly state that an appeal is timely filed so long as it is filed in accordance with the reasonable procedures of the plan, "without regard to whether all the information necessary to make a benefit determination on review accompanies the filing." 29 C.F.R. § 2560.503-1(i)(4). Thus, MetLife's appeal decision time began running on July 18, 2016, when it received Coontz's appeal letter.

> For purposes of [the timing provision], the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)(2)(iii)(B), or (i)(3) of this section *due to a claimant's failure to submit information necessary to decide a claim*, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

*Id*. § 2560.503-1(i)(4) (emphasis added). *See also Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1205 (10th Cir. 2014) ("[T]he running of the time limit for a decision on review is paused during the period of time between the administrator's request for additional information and the participant's response to that request." (citing 29 C.F.R. § 2560.503-1(i)(4))). The Plan likewise states that "[i]n the event that an extension [of time] is *necessary due to the covered person's . . . failure to submit necessary information*, the time frame for making a benefit determination is stopped from the date the claim administrator sends covered person (or authorized representative) the extension notification until the date covered person (or authorized representative) responds to the request for additional information."[5] (Def.'s Mot. Dismiss Ex. 1, 49-50 (emphasis added)).

MetLife's Extension Letter to Coontz did not operate to toll its time to decide the appeal under the Plan or 29 C.F.R. § 2560.503-1(i)(4). MetLife's letter simply stated that additional time was needed to process her appeal because it was "necessary for [MetLife] to obtain additional information." (Def.'s Mot. Dismiss Ex. 3). The letter does not state that the need for

---

[5] The Supreme Court has explained that ERISA plans should be enforced as written. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 612-13 (2013). The court stated that "focus on the written terms of the plan is the linchpin of 'a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" *Id*. at 612 (internal quotation marks omitted) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)).

additional information was caused by Coontz's failure to provide the information, nor does the letter explicitly request any information from Coontz. This unilateral decision of MetLife to seek more information for use in the appeal does not toll appeal decision deadlines, as the Plan provides that the time will only be tolled in the event that "the covered person[] . . . fail[ed] to submit necessary information." (Def.'s Mot. Dismiss Ex. 1, at 49-50). *See Lewis-Burroughs v. Prudential Ins. Co. of Am.*, No. 14-CV-1632 KM, 2015 WL 1969299, at *7 (D.N.J. Apr. 30, 2015) ("Both the Plan and the Regulation . . . impose three pre-conditions on the tolling of the deadline to decide an appeal: (1) the plan holder must have failed to provide information 'necessary' to the resolution of the appeal; (2) before the initial [appeal decision] period expires, [Defendant] must send the participant written notice that it is claiming the extension; and (3) that notice must list the 'necessary' information that [Defendant] requires from the participant."). As there is no indication in the Extension Letter that the additional time sought by MetLife was due to Coontz's failure to submit information, the time for MetLife to decide the appeal is not tolled.

Because the time for MetLife to rule on the appeal was not tolled by its Extension Letter and Coontz filed this action after MetLife had more than 120 days to decide the appeal, Coontz has exhausted her administrative remedies. MetLife's motion to dismiss is therefore denied.[6] *See* 29 C.F.R. § 2560.503-1(l).

---

[6] MetLife argues that the Plan requires Coontz to file a second-level appeal before she can bring suit in this Court. According to MetLife, because Coontz never went through the second-appeal process she has not exhausted her administrative remedies; however, the regulations provide that when a plan provider does not comply with time limits proscribed by the Plan, the plan participant's administrative remedies are deemed exhausted, rather than the initial-appeal deemed denied. *See Estate of Hale ex rel. Hale v. Prudential Ins. Co. of Am.*, 597 F. Supp. 2d 174, 183 n.10 (D. Mass. 2008) ("[The] regulations no longer treat an insurer's failure to respond to a claim as a deemed denial. Instead, the claimant is now deemed to have exhausted administrative remedies." (citing *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 236 n.7 (1st Cir. 2006))). Moreover, it would be nonsensical to require a plaintiff to prepare a second-level appeal of an initial appeal decision which was never made in order to exhaust her administrative

### b. Supplemental Filing

On June 6, 2017, Coontz filed a supplemental filing informing the Court that a decision regarding the initial appeal had yet to be made by MetLife. (Pl.'s Supp. Resp. Def.'s Mot. Dismiss, DN 18). In the filing, Coontz argues that because 146 days had passed since January 11, 2017, even the most favorable form of calculation advanced by MetLife would render MetLife's appeal decision untimely. (Pl.'s Supp. Resp. Def.'s Mot. Dismiss 1).

The Court declines to consider the supplemental filing. First, the Sixth Circuit requires that a plaintiff file a lawsuit only after exhausting her administrative remedies. *See Coomer*, 370 F.3d at 504 ("[T]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies *prior to* commencing suit in federal court." (emphasis added) (quoting *Miller*, 925 F.2d at 986)). The fact that MetLife has still not made a decision regarding Coontz's appeal does not aid in determining whether she exhausted her administrative remedies *before* filing this suit. Second, in ruling on a Fed. R. Civ. P. 12(b)(6) motion, the Court can only look to the Complaint and the pleadings associated therewith. *See Fisk*, 2011 WL 4625491, at *2. Because Coontz failed to amend the Complaint to reflect that her appeal had still not been decided, the Court cannot consider this information. Although the allegation MetLife had still not decided the initial appeal by June 6, 2017, would undoubtedly render its decision outside of the 120-day time period for MetLife to decide the initial appeal, this information is cannot be considered for purposes of the present motion.

### 2. *Alternative Request for Remand*

In the alternative to dismiss this action, MetLife requests that the Court remand this action to the claims administrator so MetLife can complete its review of Coontz's administrative

---

remedies. Accordingly, the fact that Coontz did not file a second-level appeal does not affect this Court's analysis.

appeal based on *Hackney v. The Lincoln National Life Insurance Co.*, No. 3:11-CV-268-TBR, 2012 WL 13343 (W.D. Ky. Jan. 4, 2012). (Def.'s Mot. Dismiss 9-10). In *Hackney*, this Court remanded the case to the claims administrator despite the fact that the plaintiff's claims had been "deemed exhausted" due to procedural errors in the administration process. *See Hackney*, 2012 WL 13343, at *5. In making that determination, this Court relied on *Shelby County Healthcare Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355 (6th Cir. 2009), in which the Sixth Circuit outlined three circumstances where a remand to the claims administrator would be appropriate: (i) "the plan administrator fails to comply with ERISA's appeal-notice requirements in adjudicating a participant's claim . . . 'so that a full and fair review can be accomplish[ed]'"; (ii) "the plan administrator merely 'fail[ed] . . . to explain adequately the grounds of [its] decision'"; and (iii) outside of "procedural irregularities, an incomplete factual record provides a basis to remand the case to the plan administrator." *Hackney*, 2012 WL 13343, at *5 (citing *Majestic Star Casino*, 581 F.3d at 373). In that case, this Court found that each of the three circumstances were present in *Hackney* and remand was therefore warranted. *Id*.

The present case, however, is distinguishable. First, there is no allegation that the claims administrator failed to comply with any appeal-notice requirement. Instead, the notice requirement was sufficient, as Coontz appealed her claim. In addition, the claim administrator initially denied Coontz's claim for AD&D benefits and stated the basis for the denial. (Compl. ¶ 14). This is not a situation, like in *Hackney*, where there has yet to be an initial determination by the claims administrator. *See Hackney*, 2012 WL 13343, at *5. Finally, there is a complete factual record, as the claim has already been decided and is in the appeals process. Although more information could be sought, this is unlike *Hackney* where the "case [was] in a nascent stage with only a partial administrative record." *Id.*

Furthermore, the regulations clearly permit a claimant to seek judicial review of his or her claim determination in the event the plan administrator fails to reach a timely decision on the claim. *See* 29 C.F.R. § 2560.503-1(l). MetLife does not offer any explanation as to why it should essentially be excused from complying with the time limits set forth in Section 2560.503-1(i)(1)(i). The Court therefore denies MetLife's request for remand.

### B. Defendant's Motion for Extension of Time to File Reply (DN 11)/Plaintiff's Motion to Strike Reply as Untimely Filed (DN 14)

In addition, MetLife moved for additional time up to March 31, 2017, to file its reply to the Plaintiff's response, and it filed its reply on March 29, 2017. (Def.'s Mot. Extension Time File Reply, DN 11; Def.'s Reply Mot. Dismiss, DN 16). Coontz has moved to strike the reply as untimely and opposed any extension beyond March 24, 2017. (Pl.'s Mot. Strike Reply, DN 14). Because MetLife timely requested a second extension of time before the time to reply had expired and articulated a sufficient basis for the necessity of the extension, MetLife's motion for extension of time is granted, and Coontz's motion to strike is denied.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 7) is **DENIED**, Defendant's Motion for Extension of Time to File Reply (DN 11) is **GRANTED**, and Plaintiff's Motion to Strike Reply as Untimely Filed (DN 14) is **DENIED**.

Greg N. Stivers, Judge
United States District Court

September 22, 2017

cc: counsel of record